305 So.2d 658 (1974)
JEFFERSON PARISH SCHOOL BOARD
v.
ROWLEY COMPANY, INC., and Louisiana Joint Underwriters of the Audubon Insurance Co.
No. 6460.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1974.
Rehearings Denied January 14, 1975.
*659 Jack A. Grant, Gretna, for Jefferson Parish School Board, plaintiff-appellant.
Rene R. Nicaud, Nicaud, Justrabo & Rousset, New Orleans, for Rowley Co., *660 Inc., defendant-appellee; Hugh H. Brister, New Orleans, of counsel.
William A. Porteous, III, William W. Miles, Porteous, Toledano, Hainkel & Johnson, New Orleans, for Louisiana Joint Underwriters of the Audubon Ins. Co., defendant-appellant.
Before SAMUEL, REDMANN and BOUTALL, JJ.
BOUTALL, Judge.
The Jefferson Parish School Board brought suit against Rowley Co., Inc. under terms of a contract wherein Rowley was to furnish and install science equipment in West Jefferson High School. After the equipment was delivered, but before it was installed, a fire destroyed a portion of the equipment worth $36,148.15. The School Board seeks recovery of this amount alleging that Rowley has refused to replace the damaged science equipment at no cost to plaintiff, and that Rowley failed to provide any builder's risk and fire insurance, all as provided for in the contract between them. Alternatively, the School Board sues to recover the amount from Louisiana Joint Underwriters of the Audubon Insurance Company, the fire insurer of the School Board under a policy covering the buildings and contents of all of the schools in Jefferson Parish. Both defendants answered denying liability, and additionally Rowley Co., Inc. sought a judgment in reconventional demand against the School Board for the balance due it under the contract as well as for other equipment sold by it to the School Board unrelated to this matter, for which the School Board withheld payment. These sums withheld equal the amount sought by plaintiff.
Each of the three parties have filed motions for summary judgment, and all of the motions were taken up at the same time. The School Board sought summary judgment against both Rowley and Audubon; Rowley sought judgment against the School Board dismissing its suit and granting Rowley's reconventional demand; Audubon sought dismissal of the School Board's suit. The trial court granted summary judgment to the School Board against Audubon for the amount prayed, and also granted summary judgment to Rowley against the School Board dismissing plaintiff's suit and awarding Rowley the sum prayed for in reconventional demand. The motion for summary judgment (together with an exception of no right or cause of action on the same basis) of Audubon was dismissed. The decree does not make specific adjudication of the School Board's motion for summary judgment against Rowley although the Reasons for Judgment indicate that it was intended that that motion should be dismissed. Suspensive appeals were subsequently taken by the School Board and by Audubon.
Under the procedural posture in which this appeal reaches us, we cannot arrive at a final adjudication of the rights of the parties. Although we are informed by all of the parties that there is no dispute as to essential facts, we find a serious dispute as to essential facts in this record and conclude that summary judgment is not appropriate herein.
The undisputed facts are these. The Jefferson Parish School Board was in the process of making alterations at West Jefferson High School, and in accordance with these intentions advertised publicly for bids as required by R.S. 38:2211 for the furnishing and installation of certain science equipment specified for certain science laboratory classrooms. Both detailed and general specifications were provided. Three bids were received. The lowest was the Hamilton Manufacturing Company whose bid was rejected because it qualified the delivery dates required. The next lowest bid of Rowley was accepted. The bid of Rowley was as follows:
"BASE BID:
"For all Science Equipment, and Furnishings for West Jefferson High *661 School, Complete, in accord with the DRAWINGS, SPECIFICATIONS, and CONTRACT DOCUMENTS for the LUMP SUM of Sixty-Nine thousand, eight hundred two and 00/100 DOLLARS ($69,802.00) Drexel as specified.
Although the contract documents furnished include a formal contract proposed to be signed, no contract was signed. Instead, the School Board issued a signed Purchase Order to Rowley containing the following inscriptions:
"Science Equipment and Furnishings
as per bid of June 19,
1972. $69,802.00
 ==========
*Completion of all work required
between September 1, 1972
and September 15, 1972."
Thereafter Rowley delivered the equipment and was in the process of installing the equipment in the school. On November 15, 1972, it forwarded its invoice of $52,820.00 to the School Board as its first request for payment on the contract. On November 17, 1972, there was a fire in the school, the cause of which is unknown, and some of the equipment furnished was damaged and destroyed. For some unexplained reason, the School Board later paid the invoice in question. This suit followed.
It is apparent that the plaintiff School Board is entitled to recover the amount of its loss, either from the defendant Rowley or from the defendant Audubon Insurance Company, or perhaps both. Audubon had in full force and effect a policy of fire insurance covering all of the contents of West Jefferson High School, as well as other schools, and if it is determined that the School Board is indeed the owner of the equipment delivered therein by Rowley, then Audubon must pay under its policy provisions. On the other hand, the contract documents require Rowley to bear the risk of loss.
The trial court accepted the contention of Rowley, and the alternate contention of the School Board, that the contract between Rowley and the School Board was a contract of sale, hence the title to the property had passed to the School Board upon its delivery by Rowley to the School Building. L.C.C. Art. 2456. However, we do not consider that the labeling of the agreement between the parties as that of a sale or that of a construction contract or other contract is the controlling issue between the parties. The controlling issue is that, whatever it may be called, if there was a binding contract between the parties, did that contract provide for risk of loss in the factual circumstances here?
It has been argued to us that the general law pertaining to sales provides that under the factual circumstances related above, the School Board became the owner and thus bore the risk of loss. Louisiana Civil Code Articles 2467, 2468, 2475, 2477, 2478, 1908; Hunt v. Suares, 9 La. 434 (1836); Vico Concrete Company, Inc. v. Antley, 283 So.2d 830 (La.App. 2d Cir. 1973). As opposed to this the appellants contend that this is a contract of construction and thus governed under the provisions of L.C.C. Arts. 2756, 2757, 2758, with the risk of loss being borne by the contractor. Kegler's, Inc. v. Levy, 239 So.2d 450 (La.App. 4th Cir. 1970). See also S & W Investment Co. v. Otis W. Sharp & Son, Inc., 247 La. 158, 170 So.2d 360 (1964). We do not attempt in our consideration to decide which of these two principles should be applied here because of the procedural status.
This matter comes before us on appeal from motion for summary judgment. While the facts mentioned above are not in dispute and would bring us to a consideration of the legal principles involved herein, we may not do so because we find there is a serious issue of contested fact herein and we cannot reach the consideration necessary to such a determination.
The record herein consists mainly of depositions of various witnesses produced by the parties. These depositions were taken for purposes of discovery and consist *662 of examination by all of the attorneys, and it is noted that all objections except those as to form of the questions asked were reserved until the time of the trial of the cause. Basically the witnesses of the School Board testified that the proposed project consisted not only of a sale of certain equipment, but also the installation of that equipment in a particular place and in a particular fashion as specified in the specifications. The project was advertised under the public bidding law (R.S. 38:2211) and it was proposed that a contract be entered into between the successful bidder and the School Board. The proposal upon which the bids were made consisted of general conditions, supplemental general conditions and precise specifications. The bidder was required to consider all of these documents in its bid and perform in accordance therewith. These documents were introduced into evidence in the deposition subject to the objections of Rowley.
Rowley's position is, and the testimony elicited in its behalf shows, that the School Board issued only a purchase agreement. Rowley's General Manager testified that because of this failure to enter into a formal contract, because of past dealings with the School Board in similar fashion, and because of failure to insist on performance bond and other requirements, the School Board waived the requirements imposed upon Rowley by the contract documents. The School Board representative testified that no waiver of these documents was intended or made, but that the School Board considered that the simple awarding of the bid to Rowley by the School Board's acceptance and issuance of a purchase order signed by one of its representatives was sufficient to form a binding contract under the provisions of R.S. 38:2213 and none of these conditions were waived.
The conditions which are most pertinent in the documents are as follows:

"GENERAL CONDITIONS, SECTION 13

"13. PROTECTION OF WORK AND PROPERTY-EMERGENCY:
"Contractor shall at all times safely guard Owner's property from injury or loss in connection with this contract. He shall at all times safely guard and protect his own work, and that of adjacent property, from damage. Contractor shall replace or make good any such damage, loss or injury unless such be caused directly by errors contained in contract or by Owner, or his duly authorized representatives.
* * * * * *
"25. INSURANCE:
"Contractor shall not commence work under this contract until he has obtained all insurance required under this paragraph and such insurance has been approved by Owner, nor shall the Contractor allow any subcontractor to commence work on his subcontract until insurance required of subcontractor has been so obtained and approved.
* * * * * *
"(e) Builder's Risk Insurance (Fire and Extended Coverage): Until the project is completed and accepted by Owner, Contractor, is required to maintain Builder's Risk Insurance (fire and extended coverage) on a 100 percent completed value basis on the insurable portion of project for benefit of Owner, Contractor, and subcontractor as their interests may appear. This provision shall not release Contractor from his obligation to complete, according to plans and specifications, project covered by contract, and Contractor and his Surety shall be obligated to full performance of Contractor's undertaking."

*663 "SUPPLEMENTAL GENERAL CONDITIONS, SECTION 10, INSURANCE
"10. INSURANCE:
"Insurance requirements shall be as noted in General Conditions and shall be in amounts as follows:
* * * * * *
"D. Builder's Risk: Fire and Extended Coverage including Vandalism and Malicious Mischief. (100% of value of Contract written in name of Contractor and Owner as their interest may appear).
* * * * * *
* * * "Builder's Risk" shall accompany Contractor's first request for payment.
"Cost of all Insurances shall be included in Contract price."
As we see the matter, it is first necessary to resolve the question of the validity of the contract containing the above quoted provisions before resort may be had to the applicability of the general law. In other words, if there is a binding contract between the parties (R.S. 38:2211 and 2213) then the provisions of that contract become the law between the parties and the contractual provisions must be enforced, with resultant liability. La.C.C.1901, 1903, 1945. If a determination is made that the contractual provisions are not binding upon the parties, then resort may be had to the general law to determine the intent of the parties and the responsibility thereunder. The resolution of this question involves a consideration of the weight and sufficiency of the testimony of the parties as well as the disputed documents. This is not the province of motion for summary judgment but is a matter for consideration on the merits. Lachney v. Employers Casualty Co., 281 So.2d 761 (La.App. 3rd Cir. 1973). Motion for summary judgment should not be used as a substitute for a trial on the merits. Chisholm v. Stevens, 231 So.2d 640 (La.App. 4th Cir. 1970). This is especially true where opinion or intent are involved. Butler v. Travelers Insurance Co., 233 So.2d 271 (La.App. 1st Cir. 1970); Fontenot v. Aetna Insurance Co., 225 So.2d 648 (La.App. 3rd Cir. 1969). Summary judgment being improperly granted, we must remand for further proceedings.
It has been suggested to us that we are permitted to render any judgment which is just, legal and proper upon the record on appeal, C.C.P. Article 2164, and our opinion does not provide a final disposition of the case. However, there is no appeal from a judgment dismissing a motion for summary judgment, hence all of the issues of relief sought are not before us. Additionally, the parties will be afforded an opportunity to introduce additional evidence in support of their position if such is available.
For the foregoing reasons, we are of the opinion that summary judgment is not proper in this case, and we annul and reverse the judgments appealed from, and remand this matter to the trial court for further proceedings consistent with the views expressed herein. All costs to await a final determination of the case.
Reversed and remanded.
REDMANN, J., dissents in part.
REDMANN, Judge (dissenting).
This case involves two separate though related disputes.
The first is between the school board and Rowley; the second is between the board and its own fire insurer. Although the board's claim against each is for the same value of equipment destroyed by fire, the claims do not arise from the same juridical source and they are not mutually exclusive. If the board's transaction with Rowley were a sale (not under a suspensive condition, C.C. art. 2471), then both Rowley and the board's insurer might be liable. The insurer would be liable under *664 its contract of fire insurance, and at the same time Rowley might be liable under its alleged contract obliging it to protect and insure.
That Rowley may be liable is therefore no basis for reversing the judgment holding the board's insurer liable.
The insurer's liability depends exclusively on whether the destroyed items were the subject of a sale which transferred the property to the board. And a contract to provide and install mass-produced "builtin" laboratory tables, troughs, gas and water lines and cabinets is not a saleeven if installation labor costs only 3.75% of the total contract price. The view that a contract is determinable as sale or construction by counting the dollars for labor and the dollars for material is an oversimplification of Hunt v. Suares, 1836, 9 La. 434. There the court observed "[i]t appears to us from the evidence, that the principal contract was one of sale of the mantle pieces ready made . . ." Id. at 435-436. Almost as an afterthought the court added "and the cost of putting up is trifling, compared with the cost of the article." Id., 436. Hunt does not imply that relative costs are the only evidence of the intent of the parties. A contract with a used building material dealer to furnish and install specific antique cabinetry might well be a sale of the specified antiques to be installed. (However, it might be a sale with a suspensive condition, C.C. art. 2471: if you install, I will buy.) Yet a similar contract to furnish and install modern assembly-line cabinets might be construction (expecially if required to fit to walls exactly). In the latter case, there does not appear to be any intent by the parties that some specified "the" thing, C.C. art. 2439, should become the property of the obligee. In our case, for example, Rowley would not have breached its contract if it used the cabinets which had arrived at the board's job site for some other client's rush job, as long as other cabinets were obtained in time to finish the board's job.
We should reverse the summary judgment against the board's insurer because the pieces of cabinets, troughs and the like were never intended by the parties to be the subject of a simple sale (with installation).
Furthermore, in the interest of efficient judicial administration we should render judgment against Rowley. Though a judgment doing no more than the refusal of summary judgment is not appealable, C.C. P. art. 968, the judgment in this case did more, is appealable and was properly appealed. Where a motion for summary judgment was made and opportunity for response had, the appropriate summary judgment can be rendered by the appellate court which has the case before it on a proper appeal; C.C.P. art. 2164; Roloff v. Liberty Mut. Ins. Co., La.App. 1966, 191 So.2d 901; White v. Charity Hospital, La. App.1970, 239 So.2d 385; Songe v. Tennessee L. Ins. Co., La.App.1972, 260 So.2d 149. See also Griffith v. Metry Cab Serv., Inc., La.App. 1962, 266 So.2d 739.
There are no disputed issues of material fact. The dispute is over what conclusion should be drawn from the undisputed facts; and such a dispute is no bar to summary judgment, Bouterie v. Kleinpeter, La.App. 1973, 289 So.2d 163, writ refused, La., 293 So.2d 169. The undisputed facts are that the contract was advertised, Rowley bid "in accord with the drawings, specifications and contract documents," and the school board issued a purchase order to Rowley "as per bid." The contract as advertised was therefore the contract of the parties. That contract obliged Rowley to "replace or make good any . . . damages, loss or injury" to its work unless caused by the owner, and also to provide builder's risk insurance in favor of contractor and owner as their interest might appear. Under each of those obligations, Rowley is obliged to the school board to save it from the loss which occurred.