857 F.2d 1474
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William F. GREGORY, Michael C. Sullivan, and
Sullivan-Gregory, Inc., Plaintiffs and
Counter-Defendants-Appellants,
v.
POPEYES FAMOUS FRIED CHICKEN AND BISCUITS, INC., formerly
known as Popeyes Famous Fried Chicken Corporation,
Defendant and Counter-Plaintiff-Appellee.
 No. 87-1461.
 United States Court of Appeals, Sixth Circuit.
 Sept. 9, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 We are concerned in this appeal with a dispute over restaurant franchises centering upon the plaintiff/franchisee's nonpayment of advertising fees and the defendant/franchisor's duty to advertise. Sullivan-Gregory, Inc. (SGI) sued Popeyes, Inc. (Popeyes), alleging breach of Popeyes' duty to provide adequate advertising, and Popeyes counterclaimed for franchise royalties and advertising fees due under the franchise agreements. The district court dismissed SGI's action against Popeyes for failure to establish a prima facie case, and then proceeded to enter summary judgment for Popeyes on its counterclaim. We affirm the district court's decisions in both respects.
 
 
 2
 Popeyes is a Louisiana franchisor of spiced fried chicken restaurants. SGI is a Michigan corporation whose sole shareholders are two businessmen, Sullivan and Gregory. In 1978, SGI entered into franchise option agreements with Popeyes for the development of Popeyes franchises in Detroit suburban areas. Over the next five years, SGI developed six Popeyes franchises in the area, each covered by a separate agreement. Under these franchise agreements, SGI was obligated to pay an initial franchise fee of $20,000, a weekly royalty fee in the amount of 5% of gross sales for the preceding week, and a weekly advertising fee in the amount of 3% of gross sales for the preceding week.
 
 
 3
 Even as SGI began opening additional new restaurants in the early 1980s, it was experiencing losses in its existing stores. Business suffered from economic recession in Detroit and from the entry of Kentucky Fried Chicken into the spicy chicken market in the Detroit area. Shortly after opening its first restaurant, the franchisee fell behind in its payment of royalties and advertising fees. Over the years these delinquencies increased, until at the time of trial, the combined delinquencies (including the amount of promissory notes executed embodying delinquencies) amounted to more than $900,000. Notwithstanding these delinquencies, SGI continued to operate the Popeyes franchises and to receive operational support from Popeyes. During the early 1980s, Popeyes also provided advertising and marketing support and, eventually, radio and television advertising in the Detroit area.
 
 
 4
 In March 1985, SGI filed its complaint against Popeyes, alleging that Popeyes had breached its duty under the franchise agreements to provide adequate advertising or promotion. Popeyes counterclaimed against SGI for failure to pay franchise royalties and advertising fees due under the six franchise agreements and to collect money due under two defaulted promissory notes. Following SGI's presentation of proof at trial, Popeyes moved the district court to dismiss the action. The motion was granted on the ground that SGI had failed to establish that Popeyes had breached any provision of the franchise agreements regarding advertising. Following an oral hearing, the court granted Popeyes' motion for summary judgment on its counterclaim and entered judgment against SGI in the amount of $926,420.79.
 
 
 5
 SGI argues that the district court erred in its construction of the franchise agreements. First, it contends that the agreements should have been construed against Popeyes as drafter thereof and, further, that they should have been read to require what SGI considered to be "adequate" advertising. The agreements each contain an integration clause and a choice of law provision stating that Louisiana law shall govern the interpretation of the agreement. The agreements state the following with regard to advertising by Popeyes:
 
 
 6
 ... Franchisee, recognizing the value of advertising and the importance of the standardization of advertising and promotion to the goodwill and public image of the POPEYES Famous Fried Chicken System, agrees to pay to The POPEYES Famous Fried Chicken Advertising Fund a recurring, non-refundable advertising fund contribution to be paid on a weekly basis, ... of three percent (3%) of the gross sales for the preceding week ..., which sum shall be expended by The POPEYES Famous Fried Chicken Advertising Fund ..., administered for national, regional and local advertising and promotional materials for the POPEYES Famous Fried Chicken System. All reasonable costs incurred by Franchisor ... for the production and dissemination of such advertising and promotional materials may be charged to The Advertising Fund.... There shall be no requirement that all or any part of the Fund be disbursed within any accounting period. Selection of media and locale for media placement shall be at the sole discretion of the Administrator of The Fund. Franchisee understands that such advertising is intended to maximize the public's awareness of POPEYES Famous Fried Chicken restaurants, and that Franchisor accordingly undertakes no obligation to insure that any individual franchisee benefits directly or on a pro rata basis from the placement, if any, of such advertising in his local market.
 
 
 7
 (Emphasis supplied).
 
 
 8
 SGI complained that Popeyes failed to commit funds to broadcast media advertising in the Detroit area when SGI first opened its stores (the first in the Detroit area), instead waiting until 1981 when several of SGI's Popeyes franchises had opened. Essentially, it asserts also a failure to provide adequate advertising in the Detroit area to counter competitive entries into the spicy chicken market. The district court interpreted the above stated provision of the franchise agreement to leave to the Fund Administrator's discretion the timing, selection, and placement of advertising. Furthermore, the district court held that the agreement did not require the Administrator to undertake the duty to please individual franchisees, including SGI, by selecting advertising that specifically benefitted a particular market or a particular store. SGI did not allege or prove a complete failure by Popeyes to provide advertising and promotional materials; instead, it alleged that Popeyes had provided too little advertising in Detroit and not as much promotional assistance as SGI believed was necessary to give it the "help" needed.
 
 
 9
 We find no error in the district court's conclusion that SGI failed to establish a prima facie case of Popeyes' breach of any contractual obligation relating to the franchises. SGI's argument that the franchise agreements were contracts of adhesion to be construed in the franchisee's favor is not persuasive. Plaintiff's complaint was not, therefore, improperly dismissed.
 
 
 10
 The franchise agreement between the parties provides that the agreement "shall be interpreted and construed" under Louisiana law. Michigan courts hold such contractual choice of law provisions importing a foreign state's substantive law to be valid and enforceable. See, e.g., Hardy v. Monsanto Enviro-Chem Systems, Inc., 414 Mich. 29, 323 N.W.2d 270, 294 (1982); Rubin v. Gallagher, 294 Mich. 124, 127, 292 N.W. 584 (1940). Therefore, Michigan courts would honor the parties' intent that obligations under the contract be resolved under Louisiana law.
 
 
 11
 Even when the parties have chosen a foreign law to govern the interpretation of their contract, however, Michigan law, as lex fori, still governs questions of procedure and of the remedies available to the parties. See Rubin, 294 Mich. at 128; Mt. Ida School for Girls v. Rood, 253 Mich. 482, 486, 253 N.W. 227 (1931). In an action such as this, the remedy available to the plaintiff is the remedy afforded by Michigan law. Rubin, 294 Mich. at 128.
 
 
 12
 The choice of law question in this case relates to the question of damages owed by SGI arising from its delinquency in payment of advertising fees due under the franchise agreements. SGI contends that the district court erred in finding it liable in the total amount of delinquent fees claimed. It claims that the agreement to pay advertising fees was executory because Popeyes administered the advertising fund on a "money in, money out" basis; therefore Popeyes' performance of the franchise agreement was dependent on and would occur after SGI's payment of advertising fees. Under Michigan law, a party to an executory contract is liable only for actual damages resulting from a breach, and not necessarily for the full contract price. See Rood, 253 Mich. at 486; Walton School of Commerce v. Stroud, 248 Mich. 85, 88-89, 226 N.W. 883 (1929). Therefore, SGI maintains that it should be held liable only for actual damages suffered by Popeyes and not for the total delinquency claimed. (There was no real dispute as to the total amount claimed under the agreements.)
 
 
 13
 We must therefore decide whether the advertising fees provision in the franchise agreements was in fact an executory agreement that was independent of the rest of the terms of the franchise agreement. To do this we must determine, from the nature and language of the contract, the parties' intent in entering into the franchise agreements under Louisiana law.
 
 
 14
 Under Louisiana law, an agreement which contains several different undertakings is construed generally contrary to the notion that the different undertakings are independent and divisible. Cf. Stockstill v. Byrd, 132 La. 404, 61 So. 446 (1913). SGI's several undertakings, as well as Popeyes', would therefore be considered as dependent and part of the whole agreement absent language indicating the contrary. We believe there was no error demonstrated in the district court's construing the contract to be indivisible and nonexecutory in its nature. Cf. S & W Investment Co. v. Otis W. Sharp & Son, Inc., 247 La. 158, 170 So.2d 360 (1964). Louisiana law enforces a contractual requirement in accordance with the plain language of the agreement and in order to ratify the expressed intent of the parties. Domed Stadium Hotel, Inc. v. Holiday Inns, Inc., 732 F.2d 480, 484 (5th Cir.1984). We believe the district court has followed this precept in this case.
 
 
 15
 Considering the question of damages to be a matter of remedy governed by Michigan law, as that of the forum state, we note that SGI did not contest Popeyes' claim by asserting before the district court that Popeyes had not proved its performance. Rather, SGI claimed that Popeyes was required to establish the amount of actual damages caused by SGI's default in paying the contractual royalties and advertising allowances. It also claimed a defense against Popeyes of "supervening impossibility of performance," asserting that payment of the fees was impossible because it was "losing thousands of dollars and was closing its stores," citing Bissell v. L.W. Edison Co., 9 Mich.App. 276, 284-85, 156 N.W.2d 623 (1967). (See appellant's reply brief at pp. 19, 20).[1] We conclude that an "impossibility" defense based upon economic recession and the failure of a franchise business to live up to its hoped for potential is not a viable affirmative defense to a claim of debt for failure to pay an unambiguous contractual obligation.[2]
 
 
 16
 The agreements in question indicated the parties' intent that advertising fees (and royalty fees) were to be utilized for the ongoing promotion of the Popeyes system as a whole. They did not provide that advertising and promotion services were first to be performed in the Detroit area before SGI's obligations to pay the fees were triggered. During the entire period in dispute, SGI was accorded the franchisor's product line, food techniques and formulas, restaurant design and operating procedures, logo, store manuals, and the like. Whether SGI's stores directly received $925,000 worth of Detroit area newspaper, television and other media advertising is not the question; under the franchise agreements, Popeyes was not obligated to allocate SGI's payments to Detroit area advertising. SGI utilized Popeyes' services and name during the period involved, and it had an interrelated, dependent obligation to make the prescribed payments for these services, even though the services were not as extensive or "helpful" as SGI desired. SGI incidentally acknowledged its ongoing liability from time to time by executing promissory notes representing unpaid and accrued cash obligations. The Michigan authority cited by SGI does not, in our view, support any contrary principles to those expressed herein.
 
 
 17
 SGI did not repudiate the franchise agreements during the period in dispute. It continued to operate the Popeyes franchise restaurants and continued to receive the benefits of the Popeyes support system. It cannot now complain that Popeyes must prove actual damages rather than the agreed contract fees due and payable arising out of SGI's ongoing breaches.
 
 
 18
 Nor do we find error in the grant of summary judgment by the district court. In reviewing the motion for summary judgment, we consider the evidence in the light most favorable to SGI, but we discern no genuine issue of material fact regarding SGI's liability on the contract delinquencies. The district court found that SGI had not established a prima facie case of Popeyes' breach of contract. The fact and amount of nonpayment of franchise agreement fees were not disputed. Because SGI failed to allege any specific facts that could establish a genuine defense to its liability or to the amount thereof, we conclude that the district court's grant of summary judgment was proper. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).
 
 
 19
 We accordingly AFFIRM the judgment for Popeyes.
 
 
 
 [1]
 SGI's other affirmative defense, that Popeyes had breached the agreements, was foreclosed by the district court's finding that SGI had failed to make out a prima facie case on its original claim
 
 
 [2]
 A part of SGI's claimed defense of impossibility of performance pertained to its assertion that the advertising fund was mismanaged. We perceive no error in the district court's decision that this was a collateral, and essentially immaterial, issue