# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 11, 2012

No. 11-31116

Lyle W. Cayce
Clerk

DAVID S. TRAHAN; et al,

Plaintiffs

MORTON SALT, INCORPORATED, formerly known as Morton
International, Incorporated,

Defendant-Third-Party Plaintiff-Appellant,

v.

SCOTT EQUIPMENT COMPANY, L.L.C.; LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

Third-Party Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
6:09-CV-1157

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

This is a contract dispute between the operator of a salt mine, Morton Salt,

Inc. ("Morton"), its equipment service contractor, Scott Equipment Company,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31116

L.L.C. ("Scott"), and Scott's insurance carrier, Liberty Mutual Fire Insurance Company ("Liberty"). The district court granted summary judgment in favor of Liberty, finding that Liberty's insurance policy did not extend coverage to Morton. The district court also granted summary judgment in favor of Scott, finding that Scott was not contractually obligated to obtain insurance on behalf of Morton and was therefore not liable to Morton for failure to add Morton as an additional-insured under Scott's insurance policy. Because Morton has created a genuine issue of material fact as to the terms of its oral agreement with Scott, we VACATE the district court's summary judgment in favor of Scott. However, because the plain language of Liberty's insurance policy does not extend coverage to Morton, we AFFIRM the district court's summary judgment in favor of Liberty.

I.

Morton operates the Weeks Island salt mine in South Louisiana. Since the early 1990s, Morton has contracted with Scott to provide maintenance and repair services for Morton's equipment at the Weeks Island facility. From 2000 to 2005, Morton and Scott's business relationship was governed by a Master Service Agreement ("MSA") executed each year. In that time period, each MSA contained identical terms and conditions, one of which was a provision obligating Scott to maintain a comprehensive general liability ("CGL") policy and to name Morton as an additional-insured. In 2005, Morton discontinued its practice of using MSAs. Instead, Morton instituted a policy of issuing a purchase order for the desired work and providing an "individual service contract" for each service call. The terms and provisions in the individual service contracts were substantially identical to the terms previously contained in the MSA, including the insurance provisions discussed above. Because Morton concluded that "the precise scope of repair and maintenance work is generally unknown until each job is completed," Morton's practice was to send the individual service contract

2

No. 11-31116

to Scott after each job was completed. Although each service contract required Scott to sign and return the document to Morton, Scott never did so. However, Morton never complained to Scott about its failure to sign and return the contracts.

This arrangement between Morton and Scott continued unquestioned until December 2008, when the underlying accident giving rise to this litigation occurred. On December 9, 2008, Scott's employee, David Trahan, responded to a call from Morton to perform maintenance work on Morton's equipment. During the course of his work on a scaling machine in Morton's salt mine, he was injured. Trahan asserted a claim for workers' compensation benefits against Scott's insurance provider and filed a separate tort action against Morton. In response, Morton filed a third-party demand against Scott seeking a declaratory judgment that Scott was responsible for any damages visited upon Morton. These allegations are based on the provisions in the Morton and Scott service contract, in which Scott allegedly agreed to add Morton as an additional-insured on its policy. Morton alleged that to the extent that Scott failed to provide this insurance protection to Morton, Scott breached its contract with Morton.

Morton settled Trahan's tort claim and thereafter amended its third party complaint to add Scott's insurer, Liberty, as a party. Morton sought reimbursement for its payments to Trahan based on Morton's purported status as an additional-insured under the Liberty CGL policy issued to Scott. Morton relied upon a Blanket Additional Insured Endorsement in Liberty's policy, providing that coverage extended to "any person or organizations for whom [Scott] ha[s] agreed in writing to provide liability insurance."

Morton, Scott, and Liberty filed cross-motions for summary judgment. Morton and Scott's summary judgment dispute centered on Morton's allegations that Scott breached its obligation to procure insurance for Morton. The district court granted Scott's motion on the basis that Scott and Morton's course of

3

No. 11-31116

dealings did not bind Scott to contract provisions in the service contracts that were unsigned and consistently sent to Scott after the work had been performed. The district court also granted Liberty's motion, agreeing with Liberty that the additional-insured endorsement was not triggered because Scott never agreed "in writing" to procure insurance for Morton, as required by the Liberty policy.

## II.

We review the district court's summary judgment *de novo*, applying the same standards as the district court. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir.1999). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When reviewing a grant of summary judgment, we construe all facts and inferences in the light most favorable to the non-moving party, here Morton. *Burge*, 187 F.3d at 465.

## III.

## A.

Morton argues first that the district court erred in granting Scott's motion for summary judgment because a genuine issue of material fact was created regarding whether it had a contract with Scott obligating Scott to name Morton as an additional-insured.[1] Morton argues that the service contract's terms and conditions supplemented the oral contract in which Morton engaged Scott to perform maintenance on salt mine equipment. To support its argument, Morton points to one of the provisions in the service contract that states, "[c]ommencement of the Work . . . shall constitute [Scott]'s unqualified acceptance of, and agreement to be bound by, the terms and conditions [of the service contract]." Morton asserts that Scott received hundreds of such service

---

[1] Counsel for Scott has expressly declined to argue that Morton's claim is barred by the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), LA. REV. STAT. ANN. § 9:2780 (2012). We therefore express no opinion on the applicability of the LOAIA to this case.

4

No. 11-31116

contracts and yet never objected to their terms or conditions. Moreover, Morton points out that at Morton's request, Scott even furnished Morton a certificate of insurance that reflected the coverage Liberty afforded Scott.

Scott, however, asserts that no evidence was presented that it ever affirmatively agreed to the terms in the service contract which was issued after Trahan's injury. Scott also relies on a provision on the front of the contract which provides for Scott to indicate its acceptance by "signing and returning" a copy. In this connection, Scott relies upon Louisiana Civil Code article 1947 to argue that because the contract contemplated acceptance by signing, the contract's terms cannot apply unless it is signed. *See id*. ("When in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form.").

The district court considered this evidence and concluded that if two parties orally agree to contract, one of the parties may not supply a written form thereafter and then rely on its terms without the assent of the other party. In its oral reasons for judgment, the district court stated that there could be no contract under the written terms in this circumstance as a matter of law and dismissed Morton's contract claim.

We disagree. The district court is correct that no written contract is created in such a situation. A party may not supply a written contract after the contract has been performed and then claim that the parties are bound by its terms. However, when an enforceable oral contract is perfected between the parties, but they disagree on its terms, writings between the parties may be relevant in discerning the terms of the oral contract.

Though Scott adamantly denies the existence of any contract whatsoever, its position is untenable. In Louisiana, "A contract is formed by the consent of the parties established through offer and acceptance." LA. CIV. CODE art. 1927. Moreover, "offer and acceptance may be made orally, in writing, or by action or

5

inaction that under the circumstances is clearly indicative of consent." *Id*. "A medium or a manner of acceptance is reasonable if it is the one used in making the offer or one customary in similar transactions at the time and place the offer is received." *Id*. art. 1936. "When an offeror invites an offeree to accept by performance and, according to usage or the nature or the terms of the contract, it is contemplated that the performance will be completed if commenced, a contract is formed when the offeree begins the requested performance." *Id*. art. 1939.

Under these principles, the record in this case clearly establishes the existence of a contract. Morton issued a service request to Scott; Scott complied and completed the requested service in exchange for monetary compensation, which Morton paid. A contract was thus formed. *See, e.g.*, *VVP Am., Inc. v. Design Build Dev. Servs., Inc.*, 951 So.2d 461, 467 (La. Ct. App. 2d 2007) (recognizing a contract under similar circumstances).

Though we can be sure of the existence of a contract, its terms are uncertain. "Louisiana Civil Code article 2045 defines interpretation of a contract as 'the determination of the common intent of the parties.'" *Odyssea Vessels, Inc., v. A & B Indus. of Morgan City, Inc.*, 94 So.3d 182, 190 (La. Ct. App. 1st 2012). When the words and provisions of a contract are clear, "no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. However, "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." *Id*. art. 2053. Louisiana courts have not hesitated to consider evidence of past dealings between parties when attempting to reconstruct the parties' mutual intent. *See, e.g.*, *Rogers v. Restructure Petroleum Mktg. Servs.*, 811 So.2d 1154, 1159 (La. Ct. App. 3d 2002); *Charles v. Wiegand*, 401 So.2d 1003, 1005 (La. Ct. App. 4th 1981). However, this inquiry is inevitably a question of fact not

appropriate for summary judgment. *Kemp v. Hudnall*, 423 So.2d 1260, 1261 (La. Ct. App. 1st 1982) ("Our Supreme Court [has] stated . . . that the terms of a particular contract are a question of fact." (*citing Turregano v. Barnett*, 53 So. 884 (1910))); *see Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 461 (5th Cir. 1995). In its role as factfinder, a trial court is free to give appropriate weight to evidence that a party impliedly assented to terms by not objecting over a period of years, or to any other relevant facts.

Particularly instructive is *Jefferson Parish School Board v. Rowley Co.*, 305 So.2d 658 (La. Ct. App. 4th 1975). In that case, a Louisiana court considered a similar factual situation. The defendant, Rowley, bid on the mass installation of equipment at a public school. *Id.* at 660–61. Its bid provided that it would complete the project in accord with an attached contract document. *Id.* at 661. One of the contractual provisions obligated Rowley to obtain insurance on behalf of the school. *Id.* at 662. The plaintiff, the Jefferson Parish School Board, never signed the contract. *Id.* at 661. Instead, the school board issued a signed purchase order which did not mention the terms of Rowley's contract. *Id.* Not long thereafter, a fire ignited and damaged much of the equipment. *Id.* The school board argued that Rowley's bid controlled and that Rowley should have obtained insurance to cover the equipment. *Id.* at 662. Rowley, relying in part on its past dealings with the school board, argued that the school board's purchase order controlled and that the purchase order did not contemplate any terms in another document. *Id.* The trial court granted summary judgment in favor of Rowley. *Id.* at 660.

A Louisiana appellate court reversed. *Id.* at 663. It first identified the "controlling issue" as whether there was a contract that provided for risk of loss in the circumstances before it. *Id.* at 661. The court then acknowledged the conflicting arguments of the parties, including arguments pointing to failures to act and past dealings. *Id.* at 662. The court concluded:

No. 11-31116

The resolution of this question involves a consideration of the weight and sufficiency of the testimony of the parties as well as the disputed documents. This is not the province of motion for summary judgment but is a matter for consideration on the merits. Motion for summary judgment should not be used as a substitute for a trial on the merits. This is especially true where opinion or intent are involved. Summary judgment being improperly granted, we must remand for further proceedings.

*Id.* at 663 (citations omitted).

The same principles apply to this case. Questions of fact have been presented regarding the terms of the contract the parties agreed to be bound by. These issues of fact must be presented to a factfinder on remand.

B.

Morton argues next that the district court erred in granting Liberty's motion for summary judgment. Morton claims coverage under the CGL insurance policy issued by Liberty to Scott. A provision of that policy specifies that those parties insured include "any person or organization for whom [Scott] ha[s] agreed in writing to provide liability insurance." Here Morton argues that its contract with Scott incorporated or adopted the terms found in the written service contract. Morton contends that its course of dealing with Scott sufficed to bind the parties to the written but unsigned service contract, and that this nexus is sufficient to satisfy the "agreement in writing" requirement for coverage under the Liberty insurance policy.

We disagree. First, as discussed above, there was no written agreement between the parties. Second, the Liberty policy's plain language is unambiguous and clearly provides that insurance coverage only extends to Morton in the event that Scott "agree[s] in writing" to name Morton as an additional-insured. Even if a factfinder ultimately finds that Morton implicitly agreed to the written contract's terms, it did not agree in writing. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation

8

No. 11-31116

may be made in search of the parties' intent." LA. CIV. CODE art. 2046. Anything other than written acceptance falls outside the clear terms of the policy. *See, e.g.*, *Jessop v. City of Alexandria*, 871 So.2d 1140, 1145 (La. Ct. App. 3d 2004) (citing with approval *U.S. Fire Ins. Co. v. Hartford Ins. Co.*, 726 N.E.2d 126, 129 (Ill. Ct. App. 2000)) (holding that an additional-insured endorsement that applies "because of a written contract" requires the agreement to be memorialized in writing and not by oral agreement). The district court correctly granted summary judgment in favor of Liberty.

## IV.

For the reasons stated above, we AFFIRM the district court order granting summary judgment in favor of Liberty and VACATE the district court order granting summary judgment in favor of Scott and REMAND this case to the district court for further proceedings consistent with this opinion.

AFFIRMED in part, VACATED and REMANDED in part.