285 So.2d 381 (1973)
The TRAVELERS INSURANCE COMPANY
v.
COLEMAN E. ADLER, INC.
UNITED STATES FIRE INSURANCE COMPANY
v.
COLEMAN E. ADLER & SONS, INC.
UNITED STATES FIDELITY AND GUARANTY COMPANY
v.
COLEMAN E. ADLER AND SONS, INC.
Nos. 5838-5840.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1973.
Rehearing Denied November 30, 1973.
*382 Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Allen R. Fontenot, New Orleans, for defendant-appellee.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Robert E. Barkley, Jr., New Orleans, for plaintiff-appellant U. S. Fire Ins. Co.
Bienvenu & Culver, Leonard A. Young, New Orleans, for plaintiff-appellant U. S. Fidelity & Guaranty Co.
Before GULOTTA and BOUTALL, JJ., and BAILES, J., Pro Tem.
Rehearing Denied November 30, 1973 in No. 5840.
JULIAN E. BAILES, Judge Pro Tem.
In these consolidated cases, the plaintiffs, as subrogees of insured owners of jewelry lost in a burglary of the Coleman E. Adler & Sons, Inc. (Adler) store, seek to recover from Adler the value of the jewelry stolen. The trial court denied plaintiffs' recovery on its finding that Adler "took every reasonable precaution which an ordinarily prudent person would take to safeguard the bailments entrusted to his care." We affirm this holding.
During the darkness of November 6-7, 1966, Adler, one of the largest jewelry stores in New Orleans located at 718 Canal Street was burglarized. Entrance to the building was gained by the burglars cutting a hole in the roof over the mezzanine through which they brought all of their special purpose tools. They left the building after accomplishing their purpose through the same hole in the roof, leaving behind a quantity of burglary tools, including acetylene and oxygen tanks which supplied the cutting torch used for cutting holes in the steel vault door and burning off the combination of the safe inside the vault.
During the trial it was established without contradiction that Adler had an inventory of approximately $985,000 of jewelry in its vault on this occasion of which about $100,000 in value represented customers' jewelry which was on the premises for either repair or appraisal. It was shown that all windows, doors, including vault doors, window screens and vents were secured by a contact alarm system installed and maintained by American District Telegraph Company (ADT).
After gaining entrance to the store, the burglars proceeded to the area of the vault. With an acetylene cutting torch a hole was cut through both the front and rear of the left vault door as well as through the steel security gates located inside the vault.
The vault consisted of two walls of reinforced concrete each having a thickness of eight to ten inches so constructed to provide an air chamber to insulate against fire damage. The vault was faced with two opposite hinged steel doors nine inches thick secured by a combination locking mechanism. Inside this door was a grille type door secured with a jail cell type key operated lock. Inside the vault there was a safe located against the rear wall. Apparently, the most valuable of the vault *383 contents were stored inside the safe. This safe was opened by burning off the combination locking device.
It was shown that the protective measures employed by other local jewelry establishments consisted of various electronic equipment adapted to signalling an alarm when activated during previously determined periods.
One jewelry store manager testified that his store maintained an inventory of about one million dollars. This store used no vault but housed all its gems and other precious merchandise in a safe built into a fixture located in the center of the store. Alarm tape was provided on all windows, doors, and front show windows, and ultrasonic protection on some windows on other floors of its building.
Another jewelry merchant who maintained an inventory of about $550,000, protected his premises by contacts on the doors, tape on windows and lacework about the vault. It also had a heat detective system on the door of its vault. All valuable jewelry including customers' property was kept in the vault when the store was closed.
Another jewelry company used contact protective devices and also employed a night watchman. This company had a $500,000 inventory. A trap was provided on a stairway between the third and fourth floors. Ground level and second floor windows and doors were secured by contact devices. Subsequent to the Adler burglary, this company installed photobeam and trip wire alarms. The store manager testified that customers' jewelry was not kept in either a safe or vault when the store was closed.
Finally, a fourth jewelry merchant with an average inventory of about $250,000 testified that his store's protection consisted of the ADT tape system on the doors and the safe was equipped with an ultrasonic alarm. Customers' jewelry was kept in a safe in the rear part of the store. This witness testified that at one time his store was equipped with an ultrasonic alarm system which had failed to operate on occasions when its field had been invaded.
The last person in Adler prior to the burglary was an employee, Mr. Wallace J. Bergeron, who testified that he had worked in the store until about six p. m. and that upon leaving the premises he activated the alarm system.
Mr. Milton P. Adler testified that this was the first burglary in the 70 years of Adler's existence. He also testified that shortly prior to the burglary he had sent ADT a set of the renovation plans in order for ADT to make recommendations for protection and that he installed all security recommendations ADT had made to him.
Mr. Walter K. Houston, local operations manager of ADT who had been employed by ADT for 26 years in the installation, maintenance and servicing of alarm systems, testified that no burglar alarm system is burglar proof. It was shown by this witness that Adler had been issued a certificate of compliance with the requirements set down by the Underwriters Laboratories.
From the foregoing we conclude that Adler was concerned with protection of its own property as well as that of its customers. It is true that Adler did not install all of the various sophisticated alarm equipment available through ADT, however, it does appear that Adler installed all equipment recommended by ADT.
It is noted from the testimony of four similar jewelry merchants in this locality and, in fact, in close proximity to Adler, one merchant provided no safeguard for customers' jewelry, another merchant placed customers' jewelry in a safe in the rear of the store, and only one other store was equipped with a vault. Only one employed a night watchman.
LSA-C.C. Article 2937 defines the duty of a depository as follows:
"The depository is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
*384 We believe the law is correctly set forth by this court in the very recent case of Federal Insurance Company v. C & W Transfer and Storage Company, Inc. et al., 282 So.2d 563, in which we stated:
"Our established jurisprudence has interpreted Article 2937 as follows: The depository must use the ordinary care expected of a prudent man in preserving the deposit and this requirement is enforced rigorously in the case of a compensated depository; generally, the depository who is free of negligence in safeguarding the property deposited is not liable for loss or damage to such property resulting from inevitable accident, theft, forceable taking, or like causes, although negligence may be predicated in those cases upon a failure to take preventative measures demanded by the exercise of the required degree of care; and where a deposit has been lost, stolen or damaged while deposited, a presumption arises that the same resulted from the depository's negligence or fault and the burden is then on the depository to exonerate himself from such negligence or fault. Thus in the instant case it was incumbent upon the defendants to establish that the depository, C & W, was free of negligence or fault regarding the theft of the rug."
(Italics added.)
The question immediately arises, in view of the burden placed on Adler to exonerate itself from negligence or fault in the loss, has Adler discharged this burden.
In showing that it was concerned with the protection of its premises from thieves and burglars, it enlisted the expert advice and consultation of ADT. It furnished ADT with a copy of its renovation plans and asked for advice on its system. Adler had been issued a certificate of compliance with the Underwriters Laboratories standards. It had installed a contact alarm system on its doors, windows, screens, vents and vault door. This system was activated by an employee who left the premises a few hours prior to the loss. Adler took the same care of the deposit that it took with its own property which amounted to nearly nine times the value of the customers' property.
Adler was not required to negate every conceivable unlawful act that might be perpetrated against its property. As testified to by Mr. Houston, no alarm system is burglar proof.
The depository is not an insurer of the deposit. See: Zesiger v. Dean, La. App., 247 So.2d 222, and Segura v. United States Aircraft Ins. Group, La.App., 246 So.2d 880, writ denied, 258 La. 704, 247 So.2d 584.
For us to hold that the depository was guilty of exercising less than the diligence of a prudent owner would be tantamount to our holding that Adler was indifferent to the preservation of its own property which had a value nine times greater than that of the customers. Such a conclusion and holding is not warranted or justified under the undisputed facts herein.
We find that Adler exercised the same prudent and diligent care of the deposit as it did in preserving its own property, and there is no evidence herein that it was negligent in the performance of this duty.
For these reasons, the judgment appealed is affirmed at appellants' cost.
Affirmed.