499 So.2d 155 (1986)
Jeff D. WILLIS, et al., Plaintiffs-Appellants,
v.
LOUISIANA DOWNS, INC., Defendant-Appellee.
No. 18062-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1986.
*156 Walker, Bordelon, Hamlin & Theriot, New Orleans by Terrence K. Knister, for plaintiffs-appellants.
Lunn, Irion, Johnson, Salley & Carlisle, Shreveport by Charles W. Salley, for defendant-appellee.
Before MARVIN, FRED W. JONES, Jr., and LINDSAY, JJ.
MARVIN, Judge.
Four of five plaintiffs appeal a judgment rejecting their demands for the loss of golf clubs and jewelry stolen from a van which they parked on the defendant racetrack's parking lot after paying a $1.00 parking fee. The issues concern whether the track had either actual or constructive knowledge of the van's contents, the reasonableness of the track's security measures, and whether entry into the van was "forced." The trial court resolved these issues in favor of the track. We find no error and affirm.

FACTS
The five plaintiffs were members of the Oklahoma City University golf team who came to Shreveport in a school van to play in a tournament hosted by Centenary College. Two team members went to the Louisiana Downs racetrack in Bossier City with the team coach and his wife. Three other team members remained in their hotel room. Five sets of golf clubs were in the van. While the van was parked at the racetrack the sets of golf clubs owned by *157 the five plaintiffs, some jewelry inside golf bags belonging to two of the plaintiffs, and the purse of the coach's wife were stolen.
Patrons who use the racetrack parking lot park their own vehicles and keep the keys. Plaintiffs testified that their coach drove and parked the van and paid the usual $1.00 fee at the entry gate for which he received a ticket from the gate attendant. The coach parked the van in the first available space in the parking lot which plaintiffs described as "full." The van's parked location does not affect the resolution of this case.
Plaintiffs testified that the van was locked when they left it, and that when they later returned from the track grandstand, the window on the driver's side was partially "rolled down" or open. Plaintiffs said that a security officer who looked over the van after the theft was reported "told" them that the vent window on the driver's side had been pried open with a knife to allow the door window to be rolled down to unlock the door and gain entry into the van.
The two security officers who investigated the theft denied making any such statements and said that they examined the most common places where an entry is usually forced and could not tell how entry was gained into the van.
The trial court, in reasons for judgment, stated that it was "questionable" whether the van was locked, impliedly finding no forced entry. Where conflicts in testimony exist, a trial court's evaluations of credibility and inferences of fact will not be disturbed on appeal unless manifestly erroneous. Louisiana Health Service & Indemnity Company v. Cole, 418 So.2d 1357 (La.App. 2d Cir.1982). We find no error in the trial court's conclusions in this respect.
The unexplained absence of plaintiffs' coach as a witness raises an inference that his testimony would have been unfavorable to plaintiffs. See Loewer v. Vanderhider, 336 So.2d 1011 (La.App. 3d Cir. 1976), writ denied; Maxwell v. Gibson, 421 So.2d 1175 (La.App. 2d Cir.1982), writ denied. The coach drove and parked the van. The window on the driver's side of the van was down or partially open when the coach and his golfers returned to the van after the races. Plaintiffs' coach could have testified whether he did or did not lock the door and close the window when he and the golfers left the van. The stolen property was never recovered and no one was apprehended for the theft.
Security personnel monitor the parking lot throughout the day when the racetrack is open to the public. On the day of the theft there were 10 people on patrol or surveillance duty and approximately 20 employees attending to parking duties. Two buses shuttled guests between the parking areas and the grandstand. Security measures consisted of marked and unmarked patrol cars driving through the parking lot; surveillance with binoculars from locations in the stadium affording visibility of the entire grounds, including the parking lot; and the presence of attendants in the parking lot with instructions to report anything of a suspicious nature such as someone not moving, moving in the wrong direction, or being seen in the same area twice. Shuttle bus drivers bringing patrons to the stadium had been instructed to report suspicious behavior and had proved helpful by pointing out to security personnel suspicious characters and children left in vehicles.

COMPENSATED DEPOSITARY
If the operator of parking facilities is a compensated depositary he is bound to use the same diligence in preserving the parked vehicle as he uses in preserving his own property. CC Arts. 2926, 2937; Norwegian Government Seamen's Service v. Himbert, 228 So.2d 757 (La.App. 4th Cir.1969). The fact that keys to the parked vehicle are retained by the driver does not preclude a finding that there was a deposit but may indicate whether a deposit was the type of contract intended by the parties. Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La.1973); Gauthier v. Allright *158 New Orleans, Inc., 417 So.2d 375 (La.App. 4th Cir.1982), writ denied.
A person's delivery of property to another constitutes a deposit if there is mutual intent that the party who receives the property has bound himself to preserve it. CC Arts. 2926, 2932. The track's intent to be bound as a depositary of parked vehicles is evidenced by the security measures used in the parking areas of the track and the absence of any efforts by the track to limit or disclaim its responsibility to persons who pay to enter the track premises. The $1.00 fee allowed the van and its occupants to enter and park on the track premises. The track was a compensated depositary of plaintiffs' van.
The depositary's responsibility extends to the parked vehicle and its component parts, such as tires, wheels, and hubcaps. Gauthier v. Allright New Orleans, Inc., supra. A depositary's responsibility may include personal items left in the vehicle, either if the depositary expressly or impliedly consents to "accept" the responsibility. Consent may be implied from actual or constructive knowledge of the presence of such items in the vehicle. Travelers Insurance Co. v. General Auto Service, Inc., 220 So.2d 738 (La.App. 4th Cir.1969); Norwegian Government Seamen's Service v. Himbert, supra.

NOTICE OF CONTENTS

STANDARD OF CARE
Here, there is no evidence that the track expressly consented to safeguard plaintiffs' golf clubs and jewelry or that defendant had actual notice of their presence. Compare the cases where express consent or actual notice was found. United States Fidelity & Guaranty Company v. Allright Shreveport, Inc., 256 So.2d 479 (La.App. 2d Cir.1972); United States Fidelity & Guaranty Company v. Dixie Parking Service, Inc., 262 La. 45, 262 So.2d 365 (1972); and Coe Oil Service, Inc. v. Hair, supra. Also compare cases where the car was stolen and the issue was whether the value of the car's contents should be included in calculating damages arising from the depositary's lack of due care. Insurance Company of North America v. Solari Parking, Inc., 370 So.2d 503 (La.1979), and Vallee v. Hyatt Corporation, 433 So.2d 1070 (La.App. 4th Cir.1983).
The location of items stolen from the van was not so obvious that the track could be found to have had constructive notice of their presence. One plaintiff testified that the golf clubs were "down on the floor board in the van. The only way you could see the clubs was to be inside the van." The purse which was stolen and a radar detector which was not stolen were underneath the two front seats of the van. The jewelry which was stolen was inside two of the golf bags.
No other circumstances indicate that the track knew or should have known that valuable personal items were contained in the van. Golf clubs and jewelry are not component parts of a vehicle. The track's status as a compensated depositary of the items stolen from the van was not proved.
Moreover, plaintiffs would not prevail even should we assume or find that the contract of deposit extended to the stolen items. The depositary's duty to use the same reasonable diligence to preserve the deposit as he would use to preserve his own property has been often considered. The depositary must use the ordinary care expected of a prudent man. Generally, the depositary who reasonably safeguards the deposit is not liable for loss or damage to such property from inevitable accident, theft, forcible taking, or like causes. Negligence may be predicated, however, upon the depositary's failure to employ preventive measures required by the circumstances of a particular case. Where a deposit is not returned as made, a presumption arises of the depositary's negligence or fault and the depositary has the burden to show that the loss or damage to the deposit was occasioned other than by his own negligence. Federal Insurance Company v. C & W Transfer and Storage Company, Inc., 282 So.2d 563 (La.App. 4th Cir.1973).
*159 The depositary may satisfy this burden by showing that he used due care or was not at fault. Jeter v. Lachle, 106 So.2d 808 (La.App. 2d Cir.1958). A depositary is not required to guard against every conceivable unlawful act that may be perpetrated on its premises and is not an insurer of the deposit. See Travelers Insurance Company v. Coleman E. Adler, Inc., 285 So.2d 381 (La.App. 4th Cir.1973). There the depositary successfully rebutted the presumption by showing that when its jewelry store was burglarized, it was employing reasonable security measures to protect customers' jewelry left for repair as well as its own inventory.
The presumption was not rebutted either in United States Fidelity & Guaranty Company v. Allright Shreveport, Inc. or in Coe Oil Service, Inc. v. Hair, supra. Although these cases refer to the lack of "direct evidence" to explain the loss or damage to the deposit, we deduce that the cases actually turned on each defendant's failure to reasonably safeguard his deposit as diligently as he would have safeguarded his own property.
In Allright Shreveport, the depositary's employee knew that plaintiff's clothes were hanging in the car when plaintiff drove into the parking garage. When the car was returned to plaintiff several days later, the clothes were missing. A garage attendant was on duty at all times but was ordinarily at the entrance to the garage, and plaintiff's car had been parked on the third floor. The location of the car should have made it inaccessible to outsiders, but its location apparently caused substandard attention to be given the car by the depositary's employees.
In Coe, plaintiff's airplane was damaged while tied down overnight at defendant's service area at a municipal airport. Defendant had assured plaintiff that the plane and its contents would be safe overnight. Defendant had night security lights illuminated but did not employ other security measures, relying instead on the fence around the airport and airport security personnel.

CONCLUSION
The record supports the conclusion that due care was exercised by the track for the protection of parked vehicles. The evidence is sufficient to rebut the presumption of the track's lack of due care which might be applicable if it had been found that the contract of deposit extended to the items stolen from the van.
The trial court's judgment is supported by the law and the evidence. At appellants' cost, we AFFIRM.