521 So.2d 697 (1988)
Richard KIRSHNER
v.
Paul JOHNSON, d/b/a Paul's Body Shop, South Central Bell and Sonitrol of Baton Rouge, Inc.
No. CA 87 0096.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
*698 José Romanach, Baton Rouge, for plaintiff-appellee Richard Kirshner.
Brent E. Kinchen, Baton Rouge, for defendant-appellant Paul Johnson, d/b/a Paul's Body Shop.
Before SHORTESS, LANIER and CRAIN, JJ.
*699 LANIER, Judge.
This is a suit in contract by the owner of an automobile against a compensated depositary (repairman), asserting the depositary failed to take adequate steps to prevent the theft of the automobile from his custody.[1] The trial court agreed with the plaintiff's assertion and rendered judgment in favor of the owner for $7,250 (which sum represented the $6,000 value of the automobile and the value of a $1,250 frame). This suspensive appeal followed.

FACTS
In October of 1984, plaintiff delivered his 1963 Corvette Coupe to Paul Johnson, d/b/a Paul's Body Shop, for certain repairs. Paul's Body Shop consisted of a building on a large, well-lighted lot. The lot was surrounded by a six-foot chain link fence with three strands of barbed wire across the top. The two gates to the property were kept locked when the shop was closed. On the night of October 31, 1984, plaintiff's car was stolen from the fenced lot. The padlock on the front gate had been cut with a hacksaw. The car has never been recovered.

LIABILITY OF COMPENSATED DEPOSITARY

(Assignment of Error A)
The trial court found the depositary (Johnson) liable with the following rationale:
Now, the question is whether or not the diligence used in this case was the same that he used in preserving his own property. The facts indicate that there was a fence around this establishment, the fence had a lock on it. That an alarm system had been placed for the purpose of securing the buildingand that was precipitated by two previous incidents. So, obviously, there had been two occurrences which motivated Mr. Johnson, and I think rightfully so, to place an alarm system for the purpose of securing the building which had been broken into two previous times. That despite the fact that from the evidence it appears there was a fence there also the two previous times. Within that environment the evidence further indicates that there were a number of vehicles which were outside, but this vehicle in addition to being outside also had the keys left in it. Mr. Kinchen has argued, it's about the only argument that can be made, that it didn't make any difference that the keys were left in it because Mr. Johnson's testimony was that the vehicle did not need keys in order to be operated. It really doesn't make any difference which side of that coin I believe because if it did need keys to be operated it wasn't a real good thing to leave them in the car, and if it didn't need keys to be operated it wasn't a real good thing to leave the car out there in the first place. Either wayand that is the key factual issue in this case in my mindeither way I find that the failure either to remove the keys if they needed to be used to operate the vehicle, or to move the vehicle if it can be operated without keys, placed this vehicle, Mr. Kirshner's vehicle, in a position where obviously it was thethe ripe fruit on the tree. I don't know whether there was a trailer or some type of device used to haul the vehicle away in this case.
....
I think the thief went in there and he found a vehicle which he was able to get out of there and it turns out that that was the vehicle and the reason was is either because the keys were in it or because you didn't need keys to operate it, but whatever the reason doesn't make the difference. But he took it, and it was because of the fact that either the vehicle was left outside or the keys were left in it that, in my mind, the circumstantial evidence indicates that vehicle was taken. Had neither one of those things existed then it might be a different matter. But obviously Mr. Johnson felt that it was necessary to have an *700 alarm system to secure the building because of the two previous break-ins. I've heard no evidence that Mr. Johnson left his vehicle outside with his keys in it or that his vehicle could be operated without keys. His degree of responsibility is measured by the way that he preserves his own property. I don't find it to be consistent in this case, as I say, I don't find it to be intentional but it does make him, in my mind, legally responsible for the damage suffered by Mr. Kirshner.
The appellant contends the trial court committed error by finding he had breached his duty as a compensated depositary. The appellee contends the appellant breached his duty by (1) failing to verify the security system was working on the night of the theft,[2] (2) leaving the automobile's keys in the vehicle instead of securing them, (3) leaving the automobile unlocked, and (4) failing to lock the automobile inside the workshop.
An automobile repairer is a compensated depositary. Vessel v. Bennett Ford, Inc., 421 So.2d 350 (La.App. 1st Cir. 1982). A depositary has the duty to preserve the deposit with the same diligence that he uses in preserving his own property. La.C.C. art. 2937. However, the depositary must act only as a prudent administrator. Freeman v. Garcia, 495 So.2d 351 (La.App. 2nd Cir.1986). A depositary is not an insurer of the deposit and is not required to guard against every conceivable unlawful act that may be committed against the deposit. Willis v. Louisiana Downs, Inc., 499 So.2d 155 (La.App. 2nd Cir.1986). The responsibility of a depositary is to be rigorously enforced when he is compensated. La.C.C. art. 2938.
In a suit against a depositary, the depositor initially has the burden of proving the existence of the contract of deposit and that the thing deposited was not returned or was damaged. Comment, Bailment and Deposit in Louisiana, 35 La.L. Rev. 825 (1975). From the proof of these facts, it reasonably may be inferred that the depositary has not acted as a prudent administrator, and, thus, the depositor has established a prima facie case of liability against the depositary. Ibid. Thereafter, the burden is on the depositary to exonerate himself from fault. Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La.1973).
It is uncontested that Kirshner deposited his automobile with Johnson and that the automobile was not returned to Kirshner because it was stolen by an unknown third person. This evidence established a prima facie case of liability against Johnson. Under the jurisprudence, Johnson then had the burden of proving he was not at fault, that is, that he acted as a prudent administrator by preserving the deposit (Kirshner's automobile) with the same diligence he used in preserving his own property.
Johnson introduced evidence to show that the lot on which his repair shop building was located was surrounded by a six-foot chain link fence which was topped with three strands of barbed wire. The front of the property had a chain link gate which was locked with a padlock. A high intensity sodium vapor light was installed in front of the repair shop building. The repair shop building was secured by a burglar alarm system. However, on the night of the theft, the burglar alarm was not functioning because South Central Bell had unplugged it when another alarm system was being installed on neighboring property and it had not been plugged back in. The inoperability of Johnson's burglar alarm had been detected by Johnson's employee, James Thomas Leamer, when he closed up and was duly reported to Johnson and Sonitrol of Baton Rouge, Inc. (Sonitrol), which sold and monitored the security system. Sonitrol inspected the system and notified South Central Bell of the problem. Repairs were not made prior to the theft. Johnson contends these facts show he acted as a prudent administrator, citing Travelers *701 Insurance Company v. Coleman E. Adler, Inc., 285 So.2d 381 (La.App. 4th Cir.1973).
However, the evidence also shows that Johnson's lot had been broken into on two prior occasions. As a matter of policy, Johnson secured the keys for all automobiles parked outside the repair shop building in a key drawer in a metal filing cabinet inside the building. Johnson owned automobiles, some of which were more valuable than Kirshner's, which were parked on the lot. The keys to Kirshner's automobile were left in the vehicle, and the vehicle could be started without the keys. Kirshner's vehicle was not secured in the repair shop building. There is no evidence to show that keys were left in other vehicles or that other vehicles could be started without a key. Kirshner contends this case is controlled by the holding in Leatherman v. Miller's Mutual Fire Insurance Company of Texas, 297 So.2d 540 (La.App. 3rd Cir.1974).
The direct cause of the loss of Kirshner's automobile was theft. Thus, the question herein becomes whether or not Johnson acted as a prudent administrator in securing his property in general and in securing Kirshner's property in particular. In this case, this is a question of fact. 35 La.L. Rev. at 835-836; Cf. W. Prosser, Handbook of the Law of Torts, § 37 Functions of Court and Jury, pp 205-208 (4th Ed. 1971).
The Adler case holds that, where a depositary's security measures are adequate and he exercises the same care in preserving the deposit as he does in preserving his own property, there is no liability for theft of the deposit. The precautions taken by Johnson to secure his lot were adequate; he surrounded the lot with a six-foot chain link fence, topped the fence with three strands of barbed wire, secured the gate to the lot with a padlock and installed a security light. It was economically unfeasible for Johnson to hire an armed guard; guard dogs were not practical because they scratched the cars and brushed on wet paint. However, Johnson did not secure Kirshner's automobile the same as he secured his own vehicles or those of others. The keys to other automobiles were kept in the repair shop building; the keys to Kirshner's automobile were left in the vehicle. Further, Kirshner's vehicle could be started without keys; there is no evidence of record to show that other vehicles were this vulnerable (and Johnson had the burden to show any similar vulnerability). Thus, Kirshner's vehicle became targeted as the easiest one to steal for anyone who illegally broke into Johnson's lot. In a similar factual setting, the court in Leatherman, 297 So.2d at 542, observed as follows:
Defendant Hempen himself established a certain standard of care as to the automobiles deposited with him for repair by locking the keys of those automobiles in his safe. The fact that the only automobile stolen was the one where this procedure was not followed indicates that the standard of care used by defendant was a reasonable one and in fact safeguarded all of the automobiles in his custody with the sole exception of the automobile where this standard of care was not applied.
Because Kirshner's automobile was particularly vulnerable, Johnson had a duty to take additional measures to secure it. The trial court was not clearly wrong in determining that his failure to do so breached his duty as a prudent administrator to preserve the vehicle as he would his own.
This assignment of error is without merit.

PROOF OF VALUE OF AUTOMOBILE

(Assignment of Error B[I])
Johnson contends the trial court committed error by holding Kirshner had proved a $6,000 value for his stolen vehicle.
At the trial, Gene Hebert was qualified without objection as an expert witness in the field of appraisals of Corvettes. Hebert never saw Kirshner's Corvette because it was stolen. However, the vehicle was described to him and, based on the description, Hebert gave a value of $6,000.
*702 No evidence was offered to rebut this estimate, and the trial court accepted it.
This assignment of error is patently without merit.

REFUND OF PAYMENT FOR REPAIR PART

(Assignment of Error B[II])
The trial court allowed Kirshner to recover $1,250 advanced by him to Johnson for the cost of the frame to be used in the repair of the Corvette. Initially, Johnson contends Kirshner did not seek this recovery in his petition and listed no evidence concerning it in his pretrial statement and, therefore, committed error by receiving evidence concerning this claim over objection. La.C.C.P. art. 1154 provides, in pertinent part, as follows:
If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
When Johnson entered his objection in the trial court, he did not assert that the admission of the evidence would prejudice his defense on the merits, nor did he request a continuance. Johnson does not assert prejudice in maintaining his defense in brief, and the record does not demonstrate prejudice. The fact of the $1,250 payment is uncontested in the record. In this posture, any technical error which may have been committed is harmless. This portion of this assignment of error is without merit. Cf. Louisiana Farm Bureau Mutual Insurance Company v. Dunn, 484 So.2d 853 (La.App. 1st Cir.1986).
Johnson further asserts he is not liable to return the $1,250 cost of the Corvette frame with the following rationale:
The frame was not part of the contract to repair the vehicle. The frame was a separate item that was sold from Paul Johnson to Richard Kirshner.
. . . .
Additionally, there are no grounds or reasons to overturn the contract which was entered into by and between Paul Johnson and Richard Kirshner. Obviously, there was a completed contract. There was an agreement as to the object (frame), and there was an agreement as to the cost ($1,250.00). In order to have a completed contract, there must [sic] an agreement as to the object and price. C.C. art. 2456. Plaintiff and defendant agreed as to the object and the price and therefore, had a completed contract. Merely because the plaintiff had no use for the frame, there is no reason to overturn the contract.
The evidence shows Kirshner contracted with Johnson to repair his Corvette. The repair work required was (1) body work, (2) painting, (3) complete redoing of the interior and (4) replacement of the frame. These repairs were to be made over a four to six month period of time. The estimate given for these repairs was approximately $4,600. It is unclear from the record if the $1,250 cost of the frame was included in this estimate. In his testimony, Johnson explained why the $1,250 was paid by Kirshner as follows:
... I talked to Mr. Kirshner and after Mr. Kirshner thought about it he did make the decision he wanted to go ahead and replace the frame, and, uh, I'd been quoted a price from the people in Biloxi and, uh, it wasas Mr. Kirshner said it was just a cost thing, I was justbecause we were doing an extensive amount of work to his, uh, to his car he was going to pay for the frame, he was going to pay for it up front so I wouldn't have to tie up my money into it and simply I would charge him the labor to install it.
Johnson finally decided to use a Corvette frame he had in stock.
A contract to repair is an obligation to do which is controlled by La.C.C. art. 2745, *703 et seq. which provides for leases of labor and/or industry. Abrams v. Dinh, 471 So.2d 994 (La.App. 1st Cir.1985); S. Litvinoff, 7 Louisiana Civil Law Treatise, Obligations §§ 154-158, pp 282-292 (1975). A sale is an obligation to give which is controlled by La.C.C. art. 2438, et seq. Ibid. §§ 16-26 at pp 20-38. Different legal effects flow from each of these nominate contracts. A. Levasseur, Work of Appellate Courts 1977-1978, Sales, 39 La.L.Rev. 705 (1979). Therefore, we must first denominate the type of contract here at issue.
The contract herein between Kirshner and Johnson called for extensive repairs to Kirshner's Corvette and included replacing the vehicle's frame. The total cost of the repairs was either $4,600 or $4,600 plus the cost of the frame ($1,250); whichever, the total cost of repairs far exceeds the cost of the frame. As part of the contract, ownership of the frame was to be given to Kirshner. However, the fundamental contract herein is one to repair the vehicle. The obligation to give the ownership of the frame to Kirshner by attaching it to Kirshner's automobile arises from the contract to repair and is incidental (accessory) thereto. The evidence does not show, and we do not find, that the acquisition of the ownership of the frame by Kirshner was an independent (conjunctive) obligation from the obligation to repair the Corvette. Cf. S & W Investment Company v. Otis W. Sharp & Son, Inc., 247 La. 158, 170 So.2d 360 (1964). Where one contract gives rise to several nonindependent types of obligations, one of the obligations is fundamental and the whole contract is to be treated as an obligation of that kind. S. Litvinoff, supra § 157 at pp 287-288. Thus, we conclude that, since the fundamental contract herein is one to repair, the legal relations between Kirshner and Johnson concerning the frame are controlled by La.C.C. art. 2745, et seq., and not La.C.C. art. 2438, et seq.
A repairman may furnish only labor, or he may furnish labor and materials when he performs his contract. La.C.C. art. 2757. La.C.C. arts. 2758 and 2759 provide as follows:
Art. 2758. When the undertaker furnishes the materials for the work, if the work be destroyed, in whatever manner it may happen, previous to its being delivered to the owner, the loss shall be sustained by the undertaker, unless the proprietor be in default for not receiving it, though duly notified to do so.
Art. 2759. When the undertaker only furnishes his work and industry, should the thing be destroyed, the undertaker is only liable in case the loss has been occasioned by his fault.
The evidence shows that Johnson was the owner of the frame that was to be used in repairing Kirshner's Corvette. Kirshner paid for the value of the frame in advance. Kirshner's Corvette was lost (destroyed) because of theft by a third person and because, in part, Johnson was at fault in performing his duty as a depositary under the obligation of deposit which was accessory to the repair contract. The frame was not lost. However, the ownership of the frame remained in Johnson until the repair contract could be successfully completed. A. Levasseur, supra at pp 715-717. The loss of Kirshner's Corvette by theft and Johnson's fault precluded the completion of the repair contract and, thus, the ownership of the frame remains in Johnson. Because Johnson cannot complete his repair contract with Kirshner, Kirshner is entitled to a refund of the advance ($1,250) on the contract price he made to Johnson. This portion of the assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at the appellant's costs.
AFFIRMED.
NOTES
[1] Also made defendants were South Central Bell Telephone Company and Sonitrol of Baton Rouge, Inc. The main demands and incidental demands against these defendants were dismissed by the trial court. No appeals have been taken from these dismissals.
[2] The record contains much testimony about an alarm system which malfunctioned on the night the car was stolen. However, this alarm system was designed to protect the building only; therefore, the alarm failure is irrelevant to determine liability for the theft of Kirshner's car from the lot.